H. L. EDWARDS & CO. v. BONNER & CAMPBELL RECEIVERS, ET AL.

No. 1408.

**1. Negligence—Charges not Inconsistent.**

See opinion for charges as to what facts would and what would not constitute negligence in a railway company using an engine to place cars along side of a platform where cotton was stored, held not inconsistent.

**2. Negligence—Question of Fact.**

See charge as to right of railway company to operate their engines for the purpose of placing cars to be loaded along side a compress platform where cotton was stored, held to invade the province of the jury, negligence under the supposed circumstances being a question of fact to be left to them.

**3. Railway Crossings—Signals.**

Art. 4232 Sayles Civil Statutes (Rev. Stats. 1895, Art. 4507) does not, as matter of law, require in all cases notice of approach of train to crossing to be given by both bell and whistle, and whether particular circumstances required both to be given was a question of fact. Under some circumstances it might be negligence to ring the bell, and it would be equally improper to charge that ringing the bell was or was not negligence.

**4. Crossing—Negligence in Law or Fact.**

It was an invasion of the province of the jury to declare that it would be negligence for a railway company to move cars over a street crossing without an engine attached to them.

**5. Railway—Fire—Burden of Proof.**

Where it is shown that fire was set out by an engine, the burden of proof is. upon the company to show that the engine was equipped with approved appliances, and that it was handled and operated with proper care. As to facts not peculiarly within the knowledge of defendant's employees, the burden of proving negligence remains on the plaintiff.

**6. Fire—Contributory Negligence—Pleading—Charge.**

See case for plea of contributory negligence, in exposing to fire cotton insufficiently covered with bagging, and charge submitting issue of negligence in leaving it without covering or otherwise protecting it from sparks, held to submit a different issue from that warranted by the pleading.

**7. Negligence and Contributory Negligence—Proximate Cause.**

See case involving question of contributory negligence of owner of cotton in. exposing it on platform to fire, in which it was held that the evidence made it proper to submit the issue of the liability of defendent railway for negligence causing its destruction by fire after knowledge or opportunity to know of its exposed condition, notwithstanding plaintiff might also have been deemed negligent.

**8. Railway Fire—Agreement to Carry Risk.**

Where the agent of the owner, in shipping cotton over a railway, agreed that it might be compressed, and that while on compress platform it should be at plaintiff's risk of fire, such agreement did not protect the railway company from liability for a fire caused by its negligence.

APPEAL from Williamson.    Tried below before Hon. F. G. MORRIS.

Suit by H. L. Edwards & Co. against appellees to recover value of certain cotton burned while on the platform of compress at Taylor by alleged negligence of defendants, who had judgment from which plaintiffs appealed.

The portion of defendant's answer setting up the defense of contributory negligence is as follows:

"These defendants further say that independently of the contract and agreement, between plaintiffs and the manager of said compress, that the said cotton should be at plaintiff's risk from fire, the plaintiffs knew the exact location of said platform with reference to the railroad tracks, and the necessity of compelling the defendants to operate engines along said tracks, and their habit and custom so to do; that said engines were propelled by steam, and that said platform was not a safe place for the storage of cotton, and fully knowing these facts, plaintiffs voluntarily placed their cotton upon said platform and subjected it to the danger of being burned; that the said cotton, at the time it was placed on the platform and continuously up to the time of the fire, and at that time, was badly packed, and not sufficiently covered with bagging, but the lint was to a large extent exposed for lack of proper covering, and because said bales had been cut for the purpose of sampling; that said cotton, in the condition in which it was, was highly inflammable and very subject to fire, as was well known to plaintiffs, therefore, the defendants say that plaintiffs were guilty of negligence in storing said cotton on said platform before they were needing to ship same and keeping it thereon, which directly and proximately contributed to the fire by which they claim said cotton was destroyed, and defendants are not liable for any injury resulting to them therefrom."

The trial court, in stating the defense of contributory negligence, used the following language: "The defendants deny all the allegations of plaintiff's petition, and specially plead that if defendants were guilty of negligence which contributed to the burning of said cotton (which they deny) that plaintiffs were guilty of contributory negligence, in that it is charged that plaintiffs, knowing of the use which defendants made of the railroad tracks by the side of said cotton compress platform in operating its engines and cars thereon, negligently placed their cotton on said platform without covering the same so as to protect said cotton from sparks which would be emitted from such engines in passing said platform in the usual course of the business of said railroad companies, which negligence the defendants allege contributed to such burning, wherefore they insist that plaintiffs were also guilty of negligence."

The court charged the jury as follows: "2. If the jury find from the evidence that said fire was caused by defendants' said engine emitting sparks of fire, you are further instructed that the defendants are not liable for damages caused by such fire, unless the said fire was caused by negligence on the part of defendants or their employes, and without negligence on the part of plaintiffs, which contributed proximately to said injury. I will therefore instruct you as to what is meant by negligence.

"6. If the jury believe from the evidence that the defendants or their employes were guilty of negligence as above defined, in any of the particulars about which the rules of law are submitted to you in preceding parts of this charge, or in operating the engine which they did operate about plaintiff's cotton, and that such negligence was the proximate cause of the fire in question, you will find for the plaintiffs, unless you shall find that plaintiffs were also guilty of contributory negligence, as above defined, which contributed proximately to their injury."

The eighth paragraph of the court's charge was as follows: "8. If you believe from the evidence that the plaintiffs caused their cotton to be placed where it was burned, and did not cover or otherwise protect such cotton from sparks which might be emitted from passing engines, and if you find that the placing of such cotton where it was burned, and so leaving it there uncovered, considering its condition as shown by the evidence, was such an act of omission as a person of ordinary prudence would not have done under the circumstances, and if you further find that such placing of cotton there and leaving it there uncovered was a proximate cause, which, concurring with the negligence of the defendants (if you find defendants were negligent), produced the fire which damaged the cotton, then the plaintiffs cannot recover, no difference how negligent in the matter you may have found the defendants to have been."

Plaintiffs requested the court to give the following special charges, which were refused: "1. That if they believe from a preponderance of the evidence that the running of the engine alongside the cotton under the circumstances exposed the same to danger of being set on

fire by sparks therefrom; that those in charge of the engine knew of such danger or as persons of ordinary prudence should have known of it; and that by the exercise of ordinary precaution they could have avoided exposing the cotton to such danger; and you shall further believe from a preponderance of the evidence that the fire which injured and destroyed the cotton was set out by the engine, you will find a verdict for plaintiffs for the value of the cotton, even if you shall believe that plaintiffs by placing the cotton on the platform and allowing it to remain thereon did that which persons of ordinary care would not have done under the circumstances. By the terms "ordinary care," "ordinary prudence" and "ordinary precaution," as used herein, are meant the care, prudence and precaution which ordinary persons would use under like circumstances."

"2. That if they believe from the evidence that plaintiffs agreed to carry the risk of fire to the cotton while the same was situated on the compress platform this would not relieve the defendants from liability to plaintiffs for the value of that destroyed and injured if they shall believe from a preponderance of the evidence that the cotton was destroyed and injured by the failure of those in charge of the engine to use the care and caution persons of ordinary prudence would have used under the same circumstances."

Plaintiffs requested the court to give the following special charge, numbered 3:

"Plaintiffs request the court to charge the jury: That the fact that A. M. Henderson had authority to buy cotton and ship the same for H. L. Edwards & Co. did not authorize him to waive any legal right which his principals might have for damages by reason of injury to the cotton purchased and shipped by him sustained through the negligence of another."

*Leake, Henry & Reeves* and *J. W. Parker,* for appellants.—1. The court erred in stating the pleadings of defendants regarding the fact alleged by them as constituting contributory negligence, and authorizing the jury to find contributory negligence from facts not alleged by defendants. Railway v. Harvey, 27 S. W. Rep., 424; Rost v. Railway, 76 Texas, 173; Fordyce v. Moore, 22 S. W. Rep., 236.

2. The evidence showed without conflict that the fire which injured and destroyed plaintiffs' cotton escaped from an engine operated by defendants. This placed the burden of proof upon defendants of showing that the said fire did not escape by any negligence on their part, and the court should have so charged. The charge was more onerous upon plaintiffs than the law authorized, in that it required plaintiffs to do more than prove the facts necessary to entitle them to recover. Campbell v. Goodwin, 87 Texas, 273; Railway v. Wallace, 74 Texas, 584, 585.

3. The fourth paragraph of the charge is inconsistent and contradictory, and left the jury without any certain guide to go by in deter-

mining whether the running of the engine alongside the plaintiffs' cotton was negligent or not. Railway v. Robinson, 73 Texas, 284.

4. The statute does not require the bell on a locomotive engine approaching a public street to be kept ringing until the engine shall have crossed the street. The language of the statutes is that "the whistle shall be blown or the bell rung at a distance of at least 80 rods from the place where the railroad shall cross any public road or street, and that such bell shall be kept ringing until it shall have crossed such public road." Hence it was not necessary for defendants' servants to continue the engine in connection with the cars while approaching and crossing Main street, for the purpose of giving the alarms prescribed in the statute.

5. But the question whether running the engine alongside plaintiffs' cotton was negligence or not, was a question of fact to be determined by the jury, under all circumstances of the case, and the fact that a public street had to be crossed in placing the cars did not make the question one of law: and the paragraph of the court's charge was, therefore, upon the weight of the evidence.

6. The only omission alleged by defendants as constituting contributory negligence respecting the covering of the cotton was that the cotton was not "sufficiently covered with bagging," and the charge authorized the jury to take into account any means by which the cotton could have been covered so as to protect the same against any sparks which might be emitted by passing engines, and thus permitted the jury in determining the question of plaintiffs' alleged contributory negligence, to consider facts outside of defendants' pleadings presenting that issue.

7. While it was not disputed that plaintiffs' cotton had no shed or other covering of that character over it, the defendants did not plead such fact as constituting contributory negligence but plead that plaintiffs were guilty of contributory negligence, because their cotton was not "sufficiently covered with bagging," and the assumption by the court in the said paragraph of its charge that the cotton was "uncovered," in stating the law applicable to the defendants' defense of contributory negligence, must have been understood by the jury to mean that the cotton was not "sufficiently covered with bagging," and the charge, therefore, assumed a material controverted fact, and was highly prejudicial to plaintiffs.

8. If it be not true that the said charge assumed that plaintiffs' cotton was uncovered, in the sense plead by defendants, then it gave undue prominence to the covering of plaintiffs' cotton as a factor to be considered in determining the question of plaintiffs' contributory negligence. Medlin v. Wilkins, 60 Texas, 415; Railway v. Harvey, 27 S. W. Rep., 423; Lee v. Yandell, 69 Texas, 37; Railway v. Shearer, 1 Texas Civ. App., 352; Martin v. Railway, 26 S. W. Rep., 1055.

9. It is the duty of the court to charge the law of its own motion applicable to the facts of the case; and the facts of this case presenting

clearly the issue whether the danger of setting fire to plaintiffs' cotton under all the circumstances was not imminent and known to the servants of defendants, the court should have charged the jury of its own motion that, if they believed from the evidence that the danger of setting fire to plaintiffs' cotton was imminent and known to defendants' servants, to find a verdict for plaintiffs, without reference to whether they were contributorily negligent or not.

10. But, if the failure of the court to charge as contended for in the fifth assignment was mere omission, then the court erred in refusing to give plaintiffs' special charge No. 1, which was demanded by that phase of the case. Railway v. Hynes, 3 Texas Civ. App., 21.

11. However, if the special charge was not for any reason a correct statement of the law, it was sufficient to call the court's attention to the necessity for such a charge, and the court should have given a proper one of its own motion.

12. It may be questionable whether the special charge No. 2 in the form presented was a proper one to be given by the Court, for the reason that it omitted the aspects of plaintiffs' alleged contributory negligence, but the fact that plaintiffs' agent, A. M. Henderson, agreed to carry the risk of fire while the cotton was on the compress platform did not have the effect of relieving the railroad companies from liability for destroying or injuring plaintiffs' cotton, because they were in no wise parties to the agreement and could not claim any benefits under it, and the special requested instruction was sufficient to call the court's attention to the necessity of giving a charge to this effect. Railway v. Jones, 14 S. W. Rep., 310.

13. "The court erred in refusing to give plaintiffs' special charge No. 3 upon the subject of the power of plaintiffs' cotton buyer A. M. Henderson to waive any legal right of his principals to damages by reason of the negligence of defendants."

14. There was no evidence to authorize the submission to the jury by the court of the question of contributory negligence.

15. The verdict of the jury is contrary to the law and the evidence, for this, that the compress and the platform being situated upon the defendants' right of way, and the cotton when destroyed being on the platform for a purpose beneficial to defendants, namely, compressing, and the evidence showing that it was injured and destroyed by fire set out from an engine operated by defendants, they are absolutely liable to plaintiffs for the value of the cotton injured and destroyed. If this is not so, then, considering the inflammable nature of cotton, the distance the engine would have to pass alongside the cotton and the nearness it would be thereto, the fact that no appliances have yet been discovered which will entirely prevent the escape of fire from an engine, and the fact that a high wind was blowing from the south so as to carry any sparks that might escape directly on to the cotton, the danger of setting fire to the cotton must have been apparent to those in charge of the engine, and there being other and perfectly feasible means of placing the

cars alongside the platform without exposing the cotton to any danger of fire from the engine, this case comes within the rule of those decisions which make it the duty of a person, who discovers the danger of another, to avoid inflicting injury upon him or his property if it can be done by the exercise of practicable care.

No briefs for the appellee reached the Reporter.

FISHER, CHIEF JUSTICE.—This was an action by appellants, plaintiffs in the court below, against Thomas N. Campbell, as receiver of the International and Great Northern Railroad Company, George A. Eddy and Harrison C. Cross, as receivers of the Missouri, Kansas & Texas Railway Company, The Missouri, Kansas & Texas Railway Company of Texas, and the International & Great Northern Railway Company, defendants in the court below and appellees here, for the value of 116 bales of cotton destroyed and injured by fire set out by a locomotive engine of defendant receivers, while situated on the platform of the Taylor Compress Company, in Taylor, Texas, on December 20, 1890.

Defendants, beside a general denial, plead contributory negligence on the part of plaintiffs for having their cotton on the said platform, and an agreement to assume risk from fire while thereon.  Judgment below was in favor of the defendants.

It appears from the facts that the cotton in controversy was destroyed by fire at the time alleged when it was situated on the platform of the compress company.  The compress and platform were on grounds controlled by the railway companies; but the inference is that it was removed from the tracks in use for the principal business of the company, and that there were tracks or sidings leading out to the compress which ran close to the platform.  These tracks were used by the railway companies in placing cars convenient to the platform for the purpose of loading and unloading cotton, and the tracks, it seems, were controlled by the roads.  The compress was not under the control of the railway companies, but they paid the toll for compressing.  There is strong evidence tending to show that the fire that destroyed the cotton was set out by a locomotive that approached the platform and near to the cotton in order to place some cars alongside of the platform. There is evidence that tends to show that the locomotive from which it is probable the fire escaped had recently before the fire been overhauled with reference to its condition in permitting fire to escape, and there is evidence that tends to show that it had been placed in proper condition to prevent the escape of fire; but there is also some evidence that tends to show that some fire will escape from a locomotive in use, although the most approved appliances be used to prevent it.  The evidence shows that at the time the fire was set out there was a high wind, and that the locomotive approached the platform and cotton to the windward.  There is also evidence that tends to show that the cars could have been placed alongside the platform without the necessity of the locomotive going near to it by pushing them by hand or by placing

other cars between the engine and those desired to be placed and backing them to the desired point, or by what is called "kicking" the cars and having a brakeman to stop them at the desired point.

Plaintiffs proved a rule of the railway companies in force requiring yardmen to take precautions for the protection of cotton against fire under all circumstances without any regard to any question of convenience. It also appears that the engine from which the fire evidently escaped was in operation as a yard engine at the time, there is evidence that shows that the cars may have been placed in the desired position in either of the ways suggested, and there is evidence to the effect that the methods of "kicking cars" to the desired point and of placing cars where wanted by placing others between them and the locomotive and backing them to the point are in use by first-class railroads.

Under this state of the facts, appellant contends that it was negligence to place the cars alongside the platform by the use of the engine, and that either of the three other means suggested should have been resorted to. In reply to this it is shown that a public road crosses the tracks that ran alongside of the platform a short distance from it, and it may be contended that as the law requires a whistle to be blown or a bell to be rung at a distance of at least eighty rods from the crossing and that such bell shall be kept ringing until it shall have crossed the public road, or street, that a resort to means in order to place the cars that would not require the locomotive to cross the street would be a violation of the law quoted.

Under the facts as stated, and in view of this theory the court gave to the jury the following charge: "4. The defendants had the right to operate their engines with steam and place cars by said platform and haul them therefrom, and the defendants would not be required under the law to cause cars to be run on to said side track detached from an engine, if in so doing the cars would be run across a public highway unaccompanied by an engine with a bell or other alarm, to be used when crossing in giving alarm to persons who might be passing along the public highway, and if you believe from the evidence that such movement of detached cars would have, in the reasonable course of such placing of cars, crossed a public highway, negligence cannot be attributed to defendants for such failure to cause its cars to be moved across such public highway detached from the engine by which the alarms required by law could alone be made."

Following this was also a charge instructing the jury that if they "believed from the evidence that there was a practicable means which persons of ordinary prudence would have used under like circumstances to place said cars at said platform and to remove the same therefrom by steam power without bringing the engine in such proximity to plaintiff's cotton as would place such cotton in danger of being ignited by sparks from defendant's engine, the failure to use such means would be negligence." The court, in the latter charge, recognizes the rule contended for by appellants, to the effect that if other reasonable means

could be resorted to in placing the cars, other than running the engine near the cotton and exposing it to danger, it was the duty of appellees to do so. And the former charge limits the effect of this rule, if, in so placing said cars, the same would have to cross over and along a public road unaccompanied by an engine. In other words, these two charges, considered together, mean that other methods, if reasonable and practicable, may be resorted to in placing the cars, when not accompanied by an engine, if, to do so, the cars will not cross a public road or street; and if a street or public road has to be crossed in order to locate the cars at the desired point, they must be accompanied by an engine. When considered in this aspect they may be reconciled and do not conflict, and are not inconsistent, as insisted upon by appellant. But the border line between their consistency and inconsistency is somewhat shadowy, and if given again in this form may confuse a jury, and in view of another trial we here take occasion to suggest that the meaning of the court may be made clear, if it becomes again necessary to charge upon this aspect of the case.

But there are more serious objections to the charge which in our opinion render it objectionable. The charge informs the jury as a matter of law that a railway company may in any event require its cars to be accompanied in crossing a public highway with an engine, and, in effect, that crossing the highway in this manner cannot in any event be considered negligence, although in fact it may appear that cars may be moved across such highway by other practicable means that are in use in such cases. This charge, as it so states, is based upon the assumption that the law requires a bell to be kept ringing or alarm sounded until the highway is crossed, and that a literal compliance with the law requires that the locomotive shall cross the highway in order that the bell may be rung or the alarm sounded when the engine is actually crossing the highway.

Article 4232, Sayles' Civil Statutes, upon this subject, reads that "A bell of at least thirty pounds weight or a steam whistle shall be placed on each locomotive engine, and the whistle shall be blown or the bell rung at the distance of at least eighty rods from the place where the railroad shall cross any public road or street, and that such bell shall be kept ringing until it shall have crossed such public road or stopped." The remaining portion of the article refers to crossing of railways, and provides the penalty for a violation of the requirement, and makes the railway company liable for all damages that may arise by reason of such neglect. This charge ignores that phase of the statute that permits the warning to be given by sounding the whistle. The statute does not require that the whistle shall be blown while the locomotive is crossing the highway; and under the terms of the statute, giving a warning of the approach of the cars by blowing the whistle would be sufficient although the bell may not be rung, if blowing the whistle would be a sufficient warning under the circumstances.

Cases might arise in which it would be negligence in the railway

company not to ring the bell in crossing a highway, although it may have also caused the whistle to be blown, and in a case of that character, it would be a question of fact whether, under the peculiar circumstances of the case in which such a·rule may be invoked, it was the duty to give the warning in both ways. Railway v. Wright, 62 Texas, 516. But when the warning is given in one of the methods required by law, the failure to give a warning in another way cannot be declared negligence as a matter of law, but the failure to give a warning in the other way may be, under certain circumstances, considered as a fact bearing on the question of the exercise of proper care or negligence in making a public crossing. There is no pretense but that a warning of the approach of the train to the public crossing in this instance may have been given by blowing the whistle, and if such is the case, it was a question of fact for the jury to determine if a warning in that way would be sufficient and that an additional warning by ringing the bell would not be required. The court by its charge based the right of the railroad company to move its engine across the highway in order that the bell may be kept ringing at the crossing. If a warning sufficient to answer the purpose could have been given by blowing the whistle, it would not be required to ring the bell at the crossing, as the law does not require in all cases that both shall be done.

There is another serious error in the charge which requires notice. The court assumes that, as a matter of law, it was the right of the railway company to require a bell to be continuously rung while an engine was passing over a highway, and that so doing could not under any circumstances be regarded as negligence. The law permits a bell to be rung when the engine is crossing a highway. But the law does not mean to declare that this must be done in all cases. For under certain circumstances it may be negligence to do this. Railway v. Hair, 32 S. W. Rep., 1050, decided at the present term of this court We think it was equally erroneous to instruct the jury that as a matter of law the railway company would not be guilty of negligence if it moved its locomotive across the highway. The statute does not require that an engine shall under all circumstances cross the highway in order to give the warning, and it would be unreasonable to so construe the law. Railway v. Wright, 62 Texas, 516. And for an equal reason it would be an invasion of the province of the jury to instruct them, in effect, that in placing cars, if intended that they should move across a highway, they must be accompanied by a locomotive: Suppose that, of a train of twenty cars with a locomotive to the front, it was the purpose to place the rear car just across the highway immediately in the rear of the train, would not the spirit of the law be complied with if the train should be backed a sufficient distance to place the car at the desired point, and would it not be sufficient to give warnings of the approach of the train without requiring the locomotive to cross the highway? For the errors discussed the judgment will be reversed and cause remanded.

The charge of the court complained of in the second assignment of error is somewhat obscure in meaning. If the court intended to charge that, when it was shown that the fire that destroyed the cotton was set out by the engine of the railway company, the plaintiff could only recover if it was shown that the railway company was guilty of negligence, then the charge upon this phase of the case was incorrect. If it is shown that a fire is set out by an engine of the railway company, the plaintiff is entitled to recover (unless he is guilty of contributory negligence) although there is no evidence of negligence. The rule in this State upon this subject is that, if the fire is set out by the engine, the burden rests upon the railway company to show that the engine was equipped with approved appliances in order to prevent the fire, and that it was handled and operated with proper care. And in the absence of any evidence whatever upon this subject the plaintiff is entitled to recover. Railway v. Horne, 69 Texas, 648; Railway v. Benson, 69 Texas, 409; Campbell v. Goodwin, 28 S. W. Rep., 273.

As to negligence arising in other respects, that is, as to facts that are not peculiarly within the knowledge of the employes of the company, the burden remains upon the plaintiff, and he must show the negligence in order to recover.

All that it is necessary to say in reply to the question raised by the fourth assignment of error is that upon another trial the court, in submitting the issue of contributory negligence, will doubtless confine the charge strictly to the facts that are pleaded and relied upon as negligence. The contributory negligence pleaded was that the plaintiff placed the cotton upon the platform, and that at the time it was destroyed it "was badly packed and not sufficiently covered with bagging, but the lint was to a great extent exposed for lack of proper covering." The court charged the jury that if plaintiffs "did not cover or otherwise protect the cotton from sparks, * * * and so leaving it uncovered," etc., they would be guilty of contributory negligence and could not recover. This charge was a departure from the pleadings. An insufficient covering and a partial exposure of the cotton, and uncovered cotton, are not equivalent terms. The latter means a less protection than the former. By the charge of the court the jury may have inferred that the cotton was not protected by any character of covering whatever.

There is a phase of the case upon which the court did not charge and to which our attention is called, to the effect that if under the circumstances it appeared to the servants in control and operation of the engine and cars in question that the cotton was in imminent danger of being set on fire and destroyed, if the engine was placed in close proximity thereto, by the escape of fire from it, and there were at hand other reasonable means known to the employes that they in the exercise of ordinary care and diligence may have resorted to in order to place said cars alongside of the platform, other than by the use of the engine,— ordinary care would require this to be done, and a failure to do so

would be actionable negligence, although the plaintiff were guilty of negligence in not properly protecting the cotton.

We understand the law upon this subject to be that if the plaintiff is guilty of negligence in placing himself or property in a position of danger, he is barred of recovery unless it is shown that the injury was inflicted under circumstances which show that defendant discovered the peril or danger, or could have done so by the exercise of ordinary diligence, and that such danger was imminent, and that in the exercise of ordinary diligence under the circumstances with means at his control he could have prevented the catastrophe. McDonald v. Railway, 86 Texas, 12, 13, 14; Railway v. Watkins, 29 S. W. Rep., 233. We think there are some facts in the record that warranted the submission of this issue.

Some such instruction as that set out in the eighth assignment of error should have been given. The fact that there was an agreement between the compress company and the plaintiff that the plaintiff stowed the cotton on the platform at their risk would not relieve the railway company from liability if the cotton was destroyed by their negligence. This ruling virtually disposed of the question raised in the tenth assignment of error, and it was not necessary for the court to instruct concerning Henderson's agency. The question of Henderson's agency and power to make the contract concerning the storage of the cotton under the facts as disclosed by the record, in view of the ruling just made, was unimportant. If he did make the contract with the compress company, the railway which was not a party to it can not claim the benefit of any of its terms so as to relieve it of a loss arising from its negligence.

Judgment reversed and cause remanded.

*Reversed and remanded.*

Delivered January 22, 1896.